Richardson, Oh. J.,
delivered the opinion of the court:
A motion is made under Revised Statutes, section 1080, by the attorney on behalf of the United States, for an order directing the claimant to appear, upon reasonable notice, before a commissioner of the court, and be examined on oath touching matters pertaining to the claim set up in this case.
“Sec. 1080. The court may, at the instance of the attorney or solicitor appearing in behalf of the United States, make an *25 order in any case pending therein, directing any claimant in such case to appear, upon reasonable notice, before any commissioner of the court, and be examined on oath touching any or all matters pertaining to said claim.
“ Such examination shall be reduced to writing by the said commissioner, and be returned to and filed in the court; and may, at the discretion of the attorney or solicitor of the United States appearing in the case, be read and used as evidence on the trial thereof.
“And if any claimant, after such order is made, and due and reasonable notice thereof is given to him, fails to appear, or refuses to testify or answer fully as to all matters within his knowledge material to the issue, the court may, in its discretion, order that the said cause shall not be brought forward for trial until he shall have fully complied with the order of the court in the premises.”
The claimant’s attorney resists the motion for the following reasons set out in his brief:
“First. That section 1080 has been repealed so far as it applies to Indian depredation claims by the act of March 3, 1891. (1 Supp. B.. S., 2d ed., 915.)
“Second. That even if still in force the motion is not one grantable as of course, but one which should be allowed only under special conditions shown by the Attorney-General.”
An able argument has been made by the claimant’s attorney to show on two grounds that the section has been repealed indirectly and incidentally, there being no express repeal by subsequent statutes.
The first ground is that the policy of Congress in relation to witnesses out of which it is claimed the provisions of the section arose, and to which it is an incident, has been changed, that it is not only no longer a necessity, but is inconsistent with the present law as to the admissibility of parties to testify, and that the' section is therefore superseded and practically repealed.
When the provision was first enacted in 1863 (12 Stat. L., 766), the common law prevailed that parties could not be witnesses in their own favor. It is argued in the brief for the claimant that as the section conferred a right not allowed at common law, “it was intended to form a part of a system especially applicable to the Court of Claims, wherein the ordinary rule of exclusion should prevail, but permitting the *26 Government, if it desired, to secure the testimony of a party.” The brief then proceeds:
“It was a complete system in itself, preserving the Government from the evil, as then thought, of a party testifying, but giving it a right to obtain his testimony when needed.
“That system continued in force until the Act of March 3, 1887, section 8 (1 Supp. Rev. Stat., 561). This made parties competent and gave an express right to the Government to examine a party as a witness.
“Had the act stopped here, section 1080 would have been repealed. This formed a part of a system founded on the exclusion of parties. When parties were declared competent not only in their own behalf but as witnesses for the Government the incident to the system — their examination under section 1080 — fell with the system.
“The general competence of a party as a witness for the Government is possible to coexist with the special privilege, under section 1080, but it is inconsistent with it.”
In our opinion the provision was made principally for an entirely different and much more important purpose than that assigned by the learned attorney for the claimant. It first appeared in an act passed by Congress when it entered upon a policy never before tried, and which. in the beginning was experimental, of allowing public creditors to maintain actions and recover judgment against the United States. (12 Stat. L., 765.)
It was the only provision in the act in relation to witnesses, and therefore must be held to have reference to the general policy of that act,-rather than to the rule of the common law excluding parties as ivitnesses in their own behalf.
It was undoubtedly foreseen that the United States, being a body politic and acting only through public officers, would be able to defend suits commenced by creditors all over the country at great disadvantage and embarrassment. The claimants, having direct and personal interests at stake, and knowing all the facts and the witnesses, would be earnest, active, and vigilant, while the officers of the Government might frequently be obliged to grope their way in the dark, without knowledge of the facts and the witnesses, and with no personal client to assist them.
To compensate, to some extent, for these disadvantages and as a protection against fraud, as far as practicable, Congress-made this provision enabling attorneys charged with the duties, *27 of defending tbe United States to learn something about the facts relied upon otherwise than by the ordinary method of examining the pleadings and waiting till the claimants had selected their witnesses and taken their depositions. Such depositions would be little more than ex parte, as the defendant’s attorneys could not be fully informed as to the facts in advance, andmustbe without knowledge sufficient for a searching cross-examination. Nor could the latter, in many cases, even know Avho were witnesses to the transactions.
The course of legislation on the subject is as follows:
By the act of July 2, 1861 (13 Stat. L., 351), Congress first legislated on the subject of witnesses, and provided that “in courts of the United States there shall be no exclusion of any witness * * * in civil actions because he is a party to or interested in the issue tried.” By the Act of March 2, 1867 (14 Stat. L., 457), this provision was to be construed to embrace all suits to which the United States was a party in the Court of Claims, this court having construed it otherwise. (Macauley’s Case, 11 C. Cls. R., 577.)
By Act of June 25, 1868 (15 Stat. L., 75), parties were again excluded from testifying in their own behalf in the Court of Claims, with a proviso that they might still be examined under the provisions of what is now Revised Statutes, section 1080.
So by the Act of March 3, 1887, chapter 359 (1 Supp., R. S., 2d ed., 559), parties were made competent witnesses with a repeal of Bevised Statutes, section 1079, by which they had been excluded, and this section, 1080, was expressly made applicable to all cases under that act.
Much stress is laid upon the fact that while Congress in providing for the admissibility of parties as witnesses in the acts of 1808 and 1887, they expressly saved the provisions of this section, yet in the Indian depredation act of March 3, 1891, chapter 538, section 5, it made parties competent without any reference to that section. From this it is argued that when Congress desires to preserve the privilege of section 1080, it is necessary to do so expressly.
The claimant’s brief admits that the general competency of a party as a witness for the Government is possible to coexist with the special privilege under this section, but alleges that it is inconsistent with it.
*28 In tbis last conclusion we can not concur. The provisions of the section in question are in no way inconsistent with the other statutes in relation to the admissibility of witnesses. They originated from an independent necessity, as we have shown. They are granted, in the nature of a prerogative, in consideration of the peculiar privilege allowed to public creditors, of instituting suits against the Government, and of the manifold embarrassments it is under thereby.
This court held in Jones and Brown's Case (1 C. Cls. R., 383) that “An act of Congress does not take away a prerogative of the Government, except by special and particular words,” and while the decision in that case ivas with special reference to common-law prerogatives, we think it applies with equal force to privileges granted by statute.
Holding, as we do, that the saving clauses were entirely unnecessary in the acts of 1868 and 1887, they may be attributed to a superabundance of caution to prevent the question ever being raised by ingenious attorneys, and its omission from the act of 1891 was either for that cause or from mere inadvertence. Ho reason can be conceived why the provisions should not apply to Indian depredation cases.
Besides the embarrassments to which the attorneys for the defendants are subject in other cases, there are many and very great additional ones in cases under that act.
These latter are not founded on any liability of the Government growing out of acts of public officers as to which the facts were originally and might still be within their knowledge, but are instituted for the recovery of compensation under special statute provisions assuming liability for damages committed by Indians on the borders of civilization all along the line from Texas to Oregon, hundreds and thousands of miles from Washington, where the officers of the Department of Justice, charged with the duty of defending the United States in a great number of cases thrown upon them all at once, are required by law to be located, and of the facts of which, in the first instance, no public officer ever had any cognizance. Many of the depredations, probably one-half, were committed from twenty to forty years ago, and tbe claimants are granted the extraordinary privilege, not usually accorded to other creditors of the Government, of a waiver of all questions of limitations as to *29 the time and manner of presenting their claims, except the three-year limitation for bringing actions in this court, and that upon cases originating before July 1,1865, not already presented.
It must be assumed that after this lapse of time and under the peculiar circumstances the claimants alone know the living witnesses, while in ordinary suits between individuals of recent origin the witnesses are supposed to be known to both parties alike. The difficulties the defendants are subjected to in ascertaining whom they might or should call for the defense are almost insurmountable, in addition to the great expense attending the investigation.
The disadvantage to which the United States are subjected in the defense of suits is well described by Mr. Justice Bradley in the case of Ex parte Russell (13 Wall., 668).
In commenting upon the act of June 25, 1868, now Bevised Statutes, section 1088, which provides that “The Court of Claims, at any time while any claim is pending before it, or on appeal from it, or within two years next after the final disposition of such claim, may, on motion on behalf of the United States, grant a new trial and stay the payment of any judgment therein, upon such evidence, cumulative or otherwise, as shall satisfy the court that any fraud, wrong, or injustice in the premises has been done to the United States,’7 the learned justice says:
“ The policy of this act was undoubtedly dictated by the fact that the Government agents are at a great disadvantage in defending suits in the Court of Claims on account of their personal ignorance of the facts, and of the witnesses and evidence necessary to rebut the petitioners’ case; for all which they have to depend on distant and uninterested parties, or parties whose sympathies and, perhaps, whose interests are with the claimants, whilst the claimants have had years to prepare and get up their cases and to select the most favorable proofs to sustain them. From these causes, no doubt, the Government is often greatly defrauded, and claims are proved and adjudged against it which have really no. just grounds or which have long since been settled and paid.”
The claimant’s attorney still further urges in his brief that, “if it is decided by the court that this section is not repealed, the motion in this case ought not to be granted, because no special ground has been shown for granting it. Section 1080 *30 does not give an absolute right to the United States to examine the claimants under its provisions, but merely authorizes the court to permit such examination by a special order in the case.” It has heretofore been held that it is entirely within the discretion of the court to grant or refuse a motion by the defendants under this section. (Atchison R. R. Co., 15 C. Cls. R., 10.)
The court is of opinion that where a statute authorizes a thing to be done in the discretion of the court on motion of either party, the adverse party has no absolute light to be heard in the first instance. If the court should see any reason why he should be heard, the motion would be ordered to the calendar for argument, or after being allowed, such party might make a motion to set aside the allowance, and on that he would have a hearing in open court in a proper case. There are rules on the subject of motions by which it is provided that they will be ordered to the calendar when the court desires to hear argument thereon (rule 33 and last paragraph of rule 73). Nor do we think it is necessary that the motion under this section should set out any special reasons. The court is presumed to be familiar enough with the general class of business to which the motion relates to know whether it should be granted, and if reasons are thought necessary they may be required before the motion is acted upon.
The court might refuse to grant the motion if there should appear any special circumstances to indicate that it was made for ulterior purposes or even that it was in order to delay the trial of the case, as for instance, if the claimant had already been examined and the defendants were present by attorney, and he had been fully cross-examined, the motion might notbe allowed without some reason for it being set out and the adverse party notified with an opportunity to be heard. But nothing of that kind appears in this case. There is no indication that the motion is made for the purpose of delay. The claimant has not been examined in his own behalf, and the defendants have a right to his testimony in order to gain some definite knowledge of the facts and circumstances relied upon and the names and residence of witnesses to the transaction before entering upon the preparation of the defense, and without waiting and delaying until the claimant should elect to present himself or not for examination.
*31 We consider tbe provisions of tbe section admirably adapted for tbe advancement of tbe preparation of cases, for tbe furtherance of justice, and for tbe expediting of tbe trial and disposition of cases equally advantageous to both parties.
We think tbe motion was rightly allowed, and its allowance must stand.